THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOHN JOHNSON, Defendant-Appellee.

Third District   No. 3—90—0470

Opinion filed March 8, 1991.—Rehearing denied April 26,.1991.

10

Edward Burmila, Jr., State's Attorney, of Joliet (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Edward M. Loughran, of Joliet, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, John Johnson, was charged with aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(a)(5)). He filed a motion to suppress his confession, which the trial court granted. The State appeals from the suppression order. We affirm.

The record shows that in May of 1990, the defendant filed a motion to suppress statements he had made to the police on June 1, 1987, alleging that he did not knowingly and voluntarily waive his rights. At the suppression hearing, police officer Robert Brenczewski testified that he interviewed the defendant on June 1, 1987, at the Joliet police station. He began interviewing the defendant at 9 p.m. and at that time informed him of his *Miranda* rights. The defendant stated that he understood his rights and agreed to talk to him. During an hour-and-a-half interrogation, defendant admitted his involvement in the offense. Brenczewski further testified that he was not informed that there was an attorney at the station waiting to see the defendant.

Attorney Paul Boetto testified that the defendant's uncle called and told him to come to the station to talk to the defendant. He arrived at the station at 8:15 p.m. and proceeded to inform a uniformed police officer that he was there to see the defendant and that he wanted to talk to the defendant prior to any questioning. However, he had to wait for over two hours before he was allowed to see the defendant. The interrogation of the defendant began 45 minutes after Attorney Boetto arrived at the police station.

Evidence indicated the defendant was mildly mentally retarded with an IQ between 59 and 75. Defendant was not aware prior to his interrogation that an attorney had been called on his behalf and was already present at the station. Expert testimony was given by a licensed psychologist that the defendant did not appear to understand the charge he was charged with and was not capable of exercising judgment with regard to his own welfare.

Following arguments, the trial court found that the defendant's knowing and voluntary waiver of his rights was inextricably tied to the issue of whether he was denied his right to counsel. The court held that since a lawyer was present at the station seeking access to the defendant to advise him, the defendant did not make a knowing and intelligent waiver of his rights. We agree.

On appeal, the State argues that the trial court erred in holding that the defendant's waiver was invalid. In support of its position, the State argues that this case is controlled by *Moran v. Burbine* (1986), 475 U.S. 412, 89 L. Ed. 2d 410, 106 S. Ct. 1135, and *People v. Holland* (1987), 121 Ill. 2d 136, 520 N.E.2d 270. The defendant counters that this case is controlled by *People v. Smith* (1982), 93 Ill. 2d 179, 442 N.E.2d 1325.

A review of these cases shows that in *Smith* the defendant met with an attorney and personally retained him as counsel. Further, a partner of the retained counsel went to the jail where the defendant was being held and asked to meet with him. She was denied access to the defendant, and he was never informed that his attorney was available to confer with him. He subsequently waived his rights and gave a statement to the police.

In suppressing the statement, the court held that when police, prior to or during custodial interrogation, refuse a retained attorney access to the defendant, there can be no knowing waiver of the right to counsel if the defendant has not been informed that the attorney is present and seeking to consult with him.

In *Burbine,* the defendant confessed after receiving and waiving his *Miranda* rights. He did so without knowing that his sister had re-

tained an attorney to represent him and that an associate had been in telephone contact with the police. Counsel had informed the police that she would act as the defendant's counsel in the event they planned to question him. Though she was told that the defendant would not be questioned until the next day, he was questioned later the same day.

In affirming the trial court's denial of the defendant's motion to suppress, the court stated, "Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right. *** Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Moran v. Burbine* (1986), 475 U.S. 412, 422-23, 89 L. Ed. 2d 410, 421-22, 106 S. Ct. 1135, 1141.

In *Holland*, the defendant was arrested and shortly thereafter telephoned his wife, asking her to obtain an attorney for him. An attorney was retained on the defendant's behalf, and the attorney apparently made telephone contact with the police, telling them that he wished to confer with the defendant prior to any questioning. However, during this same time, the defendant was given his *Miranda* warnings, waived them, and gave inculpatory statements. On appeal, the defendant cited *Smith* and argued that the court erred in not suppressing his statements.

In affirming the trial court, the court found that *Smith* was distinguishable and that *Burbine* was on point. "Here, as in *Burbine*, a relative secured counsel for the suspect; the suspect was unaware that counsel had been retained; [and] all communication between the police or prosecutors and the attorney was by telephone." (*People v. Holland* (1987), 121 Ill. 2d 136, 153, 520 N.E.2d 270, 277.) In distinguishing *Smith*, the court went to great lengths to emphasize that, in *Smith*, the defendant's attorney did not limit her contact with the authorities to mere telephone calls. She was personally present at the police station and specifically asked to meet with the defendant.

In the instant case, our review of the relevant case law shows that the question to be asked in this case is what type of contact the attorney made with the authorities. If the attorney's contact was merely by telephone, then *Holland* would apply. However, if the attorney's contact was that he personally went to the police station and requested to see the defendant, then *Smith* would apply.

■ Here, we find that *Smith* is controlling. The defendant's attorney was present at the police station prior to the questioning. In addition, he specifically requested that he be allowed to meet with the defendant prior to any questioning. He was nonetheless denied access to the defendant.

The trial judge in the instant case ruled that this mentally retarded defendant with no prior police contact, for whom a lawyer was present at the station and seeking access to defendant to advise him, did not make a knowing and intelligent waiver of his rights.

We find that the defendant's waiver of his right to counsel was not knowingly or intelligently made since the defendant's attorney was denied access to him and the defendant was not informed that his attorney was present.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

STOUDER, P.J., and GORMAN, J., concur.